UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EASTWIND MARITIME, S.A.,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　08 Civ. 3292 (HB)
　　　　　- against -　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　<u>OPINION & ORDER</u>
TONNEVOLD REEFER 7 KS a/k/a TONNEVOLD　　　:
REEFER 4 KS a/k/a TONNEVOLD REEFER 2 KS　　　:
a/k/a O.T. TONNEVOLD AS a/k/a TONNEVOLD OT,　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendant.　　　　　　　　　　:
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

    Tonnevold Reefer 7 KS ("Tonnevold"), the defendant in this maritime action, moves this Court for security for its counterclaim pursuant to Rule E(7)(a) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure ("Supplemental Rules"). For the following reasons, Tonnevold's motion is denied.

## I.  EASTWIND'S CLAIMS

    Since September of 2000, Tonnevold,[1] the owner of the M/V THORGULL ("*Thorgull*"), has entered into various contracts for the charter of the *Thorgull* by nonparty ECo Shipping Ltd. ("ECo")[2] or by the plaintiff, Eastwind Maritime, S.A. ("Eastwind").[3]  Eastwind alleges that ECo was Eastwind's predecessor in interest to the contracts at issue here. Tonnevold, on the other hand, asserts that Eastwind and ECo are alter egos. (*See* Tr. of Oral Argument 5:1, Aug. 19, 2008.)

    This admiralty action arises from a dispute regarding Eastwind's charter of the *Thorgull* under the third addendum to a charter party dated December 6, 2006 ("2006 Charter"). (Compl. ¶ 7.) The 2006 Charter was executed by Tonnevold as shipowner and ECo as charterer, but all three addenda name Eastwind as the charterer, with no mention of ECo. (*See* Walle Ex. 2 at 1; Duffy Aff. Ex. 8 at 1-3.) Eastwind asserts that the three addenda "effectually novat[ed]" the 2006 Charter by replacing ECo with Eastwind as the party in interest. (Compl. ¶ 8.) Each one-

---

[1] Tonnevold is a foreign business entity organized under the laws of Norway with a place of business in Norway. (Compl. ¶ 4.) Tonnevold Reefer 7 KS, the owner of the *Thorgull*, is a successor corporation to Tonnevold Reefer 4 KS. (Answer ¶ 7.)
[2] ECo is a foreign business entity with a place of business in Monrovia, Liberia. (Answer ¶ 36.)
[3] Eastwind is a foreign business entity operating from the offices of the Eastwind Group in New York, New York. (Compl. ¶ 2.)

1

page addendum incorporates by reference the terms of the 2006 Charter and sets forth the terms for a separate voyage. (Duffy Aff. Ex. 8 at 1-3.)

Under the third addendum, dated July 19, 2007 ("2007 Addendum"), Eastwind chartered the *Thorgull* to carry cocoa from Malaysia to Colombia, a 45-day voyage beginning July 18, 2007. (Compl. ¶ 9; Duffy Aff. Ex. 8 at 3.) Eastwind claims that during this charter Tonnevold wrongfully charged it for days when the *Thorgull* was "off-hire," for fuel used while "off-hire," and for fuel that Eastwind had already supplied to *Thorgull*. (Compl. ¶ 12.) Eastwind further claims that Tonnevold failed to deduct Eastwind's expenses from the charges and that Tonnevold must reimburse Eastwind for expenditures on fuel that the *Thorgull* used in excess of the fuel consumption contemplated by the contract. (*Id.*)

Eastwind's claims will be, or are in the process of being, arbitrated in London, pursuant to the arbitration clause in the 2006 Charter, which is incorporated by reference in the 2007 Addendum. (Compl. ¶¶ 14-15; Walle Ex. 2 at 5.) As of August 19, 2008, Eastwind had not yet commenced arbitration. (Tr. 15:8-9.)

On Eastwind's *ex parte* application pursuant to Rule B of the Supplemental Rules, this Court entered an order authorizing process of attachment and garnishment of up to $452,616.48 of Tonnevold's property. As of August 19, 2008, $267,871 of this amount had been attached. (Tr. 2:18.)

## II. TONNEVOLD'S COUNTERCLAIMS

Tonnevold has made a counterclaim for $836,601.22 and now seeks an order compelling "ECo and/or Eastwind" to post security for the full value. Tonnevold claims that ECo breached an earlier charter party dated December 20, 2005 ("2005 Charter"), which was executed by Tonnevold as shipowner and ECo as charterer, and that even though Eastwind was not a party to the 2005 Charter, Eastwind is liable for the breach as ECo's alter ego. (*See* Answer ¶ 36.)

Under the 2005 Charter, ECo chartered the *Thorgull* for a voyage from the Canary Islands to Spain from August 7 to September 18, 2006. (Answer ¶ 39.) For some or all of that voyage, ECo subchartered the ship to a third company, Sama Navigation, which engaged in illegal trade by permitting the *Thorgull* to take transshipments of redfish from at least seven fishing vessels at sea. (*Id.*; Tr. 11:12-14.) Tonnevold alleges that, notwithstanding the subcharter, the *Thorgull* was under the control of both ECo and Eastwind, which are responsible for the illegal trade. (Answer ¶ 39.)

2

The fishing vessels from which the *Thorgull* received such redfish were blacklisted by the North East Atlantic Fisheries Commission ("NEAFC") and the Northwest Atlantic Fisheries Organization ("NAFO"), which conserve and manage fishery resources in the Atlantic Ocean. (*Id.* ¶¶ 40, 42.) Tonnevold asserts that, in permitting the *Thorgull* to receive redfish from such blacklisted vessels, ECo and Eastwind violated the NEAFC Scheme of Control and Enforcement, which prohibits the on-carriage of certain protected fish species such as redfish, and breached clause 15 of the 2005 Charter, which required ECo to employ the *Thorgull* in "lawful trades." (*Id.* ¶ 43.)

To punish the *Thorgull* for its receipt of redfish, NEAFC and NAFO blacklisted the vessel for approximately one year, until late 2007. (*Id.* ¶¶ 44-45.) As a consequence, Tonnevold could not charter the *Thorgull* at a market rate. (*Id.* ¶ 46.) Tonnevold alleges that ECo (and Eastwind, as its alter ego) attempted to mitigate Tonnevold's losses by entering into the 2006 Charter and chartering the *Thorgull* while it was blacklisted. (*Id.* ¶¶ 46-47.)

Tonnevold's counterclaim for $836,601.22 represents the costs it incurred to persuade NEAFC and NAFO to remove the *Thorgull* from their blacklists, the revenue it lost because it was compelled to charter the *Thorgull* to ECo and Eastwind at a below-market rate and because the ship remained unemployed for periods of time, and additional expenditures that arose because the ship was forced to trade outside its usual trading pattern. (*Id.* ¶ 62.)

The 2005 Charter requires that disputes arising under it must be arbitrated in New York, and so Tonnevold has commenced an arbitration proceeding in New York against ECo, but not Eastwind, to recover on its claim. (*Id.* ¶ 63; Tr. 7:8-10.) Tonnevold now moves this Court to order Eastwind to post countersecurity for that claim in this maritime action.

### III. LEGAL STANDARD

Rule E(7)(a) of the Supplemental Rules provides, in relevant part, that

> [w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise.

Fed. R. Civ. P. Supp. R. E(7)(a). A court may order the plaintiff in a maritime action to post countersecurity if (1) the defendant has given security, (2) the defendant's counterclaim arises from the same transaction or occurrence that is the subject of the plaintiff's claim, and (3) no cause has been shown why countersecurity should not be ordered. *See id.*

3

Whether to grant a motion for countersecurity is "an equitable determination within the broad discretion of this Court." *North Offshore AS v. Rolv Berg Drive AS*, 07-cv-3095, 2007 WL 4233014, at *3 (S.D.N.Y. Nov. 29, 2007). Two countervailing principles must guide the court in exercising its discretion: (1) the court should place the parties on an equal footing with respect to security, and (2) the court should avoid the imposition of burdensome costs that might prevent a plaintiff from bringing suit. *Result Shipping Co. v. Ferruzzi Trading USA Inc.*, 56 F.3d 394, 399-400 (2d Cir. 1995).

The court need only probe the merits of the defendant's counterclaim to determine that it is "non-frivolous." *See id.* at 400; *see also Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586, 589 (S.D.N.Y. 2008) ("The weight of the authority suggests that in reviewing counterclaims on a motion for counter-security pursuant to Rule E(7), courts should not conduct extensive merits analysis, but rather, screen only for totally frivolous claims.") (quotation marks omitted); *Finecom Shipping Ltd. v. Multi Trade Enters. AG*, 05-cv-6695, 2005 WL 2838611, at *1 (S.D.N.Y. Oct. 25, 2005); *Rice Co. v. Express Sea Transp. Corp.*, 07-cv-7077, 2007 WL 4142774, at *4 (S.D.N.Y. Nov. 15, 2007).

## IV.  ANALYSIS

Here, Tonnevold "has given security for damages in the original action," within the meaning of Supplemental Rule E(7)(a). Further, Tonnevold's claim against ECo is "non-frivolous" because if ECo was responsible for the *Thorgull*'s receipt of redfish, and such receipt constituted an illegal trade pursuant to NEAFC and NAFO regulations, as Tonnevold alleges, then ECo likely breached the 2005 Charter, which required the vessel to be employed in "lawful trades." However, the requirements of Rule E(7)(a) are not met because Tonnevold's counterclaim does not arise from the same transaction or occurrence as Eastwind's claim, and there is other "cause" why countersecurity should not be granted.

**A.** "**Same Transaction or Occurrence**"

In assessing whether different claims arise from the same transaction or occurrence, courts apply the test for compulsory counterclaims developed under Fed. R. Civ. P. 13 and its predecessors. *See, e.g.*, *Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688, 691 (S.D.N.Y. 2008); *Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 964 (5th Cir. 1984). *See also* Fed. R. Civ. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that . . . the pleader has against an opposing party if the claim . . . *arises out of the transaction or occurrence that is the subject matter of the opposing party's*

*claim*.") (emphasis added).

Several factors may suggest that a counterclaim is compulsory: (1) an identity of facts between the original claim and counterclaim; (2) a mutuality of proof; and (3) a logical relationship between original claim and counterclaim. *See, e.g.*, *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 811-12 (2d Cir. 1979). "The test for determining whether a counterclaim is compulsory is whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are 'so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1980) (quotation marks and citations omitted)).

In the maritime context, in this district courts generally consider the "same transaction or occurrence" requirement to be met where the counterclaim arises from the same contract or voyage as the original claim. *See, e.g.*, *Rosemary*, 531 F. Supp. 2d at 589 (counterclaims were "essentially the flip side" of the plaintiff's claims and stemmed from the same oral agreement); *Ocean Line Holdings Ltd. v. China Nat'l Chartering Corp.*, 07-cv-8123, 2008 WL 4369262, at *5 (S.D.N.Y. Sept. 26, 2008) (both claim and counterclaim asserted losses that resulted from the fact that the vessel ran aground, broke in two and sank); *Front Carriers Ltd. v. Transfield ER Cape Ltd.*, 07-cv-6333, 2007 WL 4115992, at *1 (S.D.N.Y. Nov. 19, 2007) (claim and counterclaim each asserted the other party breached the same contract of affreightment); *Rice*, 2007 WL 4142774, at *1 (counterclaim, which alleged that the plaintiff had failed to pay for its use of the ship, involved the same voyage to Iran as the plaintiff's claim); *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235, 236 (S.D.N.Y. 1996) (claim and counterclaim each asserted that the other party breached the same charter agreement).

Here, despite the fact that Eastwind's and Tonnevold's claims relate to different voyages under different charter parties, Tonnevold argues they arise out of the same "transaction" within the meaning described by Judge Lynch in *Voyager*: "it has been well established since at least 1926 that the word 'transaction' has a 'flexible meaning' that 'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'" *See* 539 F. Supp. 2d at 691 (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)).

However, Tonnevold's reliance on *Voyager* is misplaced because the claims in that case were more closely connected than the claims here. In *Voyager*, the plaintiff-shipowner

5

claimed that the defendant-charterer breached their charter party. *Id.* at 690. The defendant then made several counterclaims that it "reserve[d] the right to pursue" in arbitration proceedings in London, which had commenced pursuant to the charter party. *Id.* The plaintiff's ship had remained unemployed because the defendant returned the ship before the date specified in the charter party, and the defendant had already compensated the plaintiff for such unemployment period. In its counterclaim, the defendant alleged that it overpaid because the plaintiff misrepresented the duration of the unemployment period. *Id.* Judge Lynch held that the defendant's counterclaim arose from the same "transaction or occurrence" as the plaintiff's claim for breach, even though the alleged misrepresentation, which was the source of the counterclaim, took place after the vessel was returned and the charter concluded. *Id.* at 691. The defendant also asserted counterclaims involving speed and over-consumption charges arising from certain voyages under the charter party; these counterclaims more clearly met the "transaction or occurrence" test because they arose from the same charter party that was the source of the plaintiff's claim. *See id.*

All the claims in *Voyager* were related to the same charter party. Here, the parties' claims arise from different charter parties between different entities for different voyages which took place a year apart and involved shipments of different types of goods. Eastwind's claim is for Tonnevold's breach of the 2007 Addendum, and Tonnevold's counterclaim is for ECo's breach of the 2005 Charter. Nevertheless, Tonnevold argues that the claims have a "logical relationship" because the parties would not have entered into the 2006 Charter and its addenda had ECo not breached the 2005 Charter. Tonnevold further contends that it incurred all its losses during the period of the 2006 Charter and its addenda.

These arguments are not well taken. First, the fact that Tonnevold's losses occurred around the same time that Eastwind's claim arose is not evidence that the claims themselves share a logical relationship, an identity of facts or a mutuality of proof. *See Federman*, 597 F.2d at 811-12. Second, Eastwind denies that ECo or Eastwind entered into the 2006 Charter or 2007 Addendum to mitigate Tonnevold's losses due to the blacklists.[4] Even if the 2006 Charter were a "byproduct" of ECo's alleged breach of the 2005 Charter, as Tonnevold claims, a "mere *sine qua non* relationship between [the defendant's] alleged injury and the

---

[4] Tonnevold asserts that Eco and Eastwind admitted that they were responsible for the *Thorgull*'s blacklisting and would continue to charter the vessel as mitigation. (Tr. 12:20-25, 23:12-13.) However, Eastwind denies that Moors ever made such an admission, and none of the emails that Tonnevold has submitted as purported evidence support Tonnevold's allegation. (*See* Honan Decl. Ex. A at 1-2, 5-6, 12.)

[plaintiff's claim] is insufficient to satisfy the required nexus which gives rise to a compulsory counterclaim." *Id.* at 812. That the contracts at issue in the parties' claims bear some relationship to one another does not necessarily mean that the claims arise out of the same transaction or occurrence.

The 2005 Charter and the 2006 Charter and its addenda differ in other respects that suggest that the alleged breaches did not arise out of the same transaction or occurrence. First, the 2005 Charter between Tonnevold and ECo incorporates by reference certain terms of their "pooling agreement," executed around the same time, by which Tonnevold contributed the *Thorgull* to a pool of similar vessels under ECo's commercial management. (*See* Walle Decl. Ex. 1 at 1 (2005 Charter refers to pooling agreement for "place or range of delivery").) Under the pooling agreement, the *Thorgull* effectively became part of a cooperative venture of reefer vessels to carry fish. (*See id.*; Poles Decl. ¶ 10, Ex. 6 to Duffy Aff.; Tr. 21:17-22.) By December 2006, however, when Tonnevold and Eco executed the 2006 Charter, the pooling agreement was no longer effective and the "pool" no longer operational, because the small number of ships in it had led to undesirable administrative costs. (*See* Answer ¶ 50; Walle Decl. ¶ 15.) The 2006 Charter, therefore, makes no reference to any pooling agreement, is entered on a different charter-party form, and does not call for the *Thorgull* to carry fish. (*See* Walle Decl. Ex. 2.) The three addenda to the 2006 Charter were executed by Eastwind, not ECo, and the 2007 Addendum, which Tonnevold allegedly breached, involved the *Thorgull*'s shipment of cocoa, not fish.

Further, the 2005 Charter, like the pooling agreement that it incorporates by reference, require disputes between Tonnevold and ECo to be arbitrated in New York under New York law. The 2006 Charter Party and its addenda require disputes to be arbitrated in London under English law.

Because of these differences between the contracts and voyages at issue, the parties' claims are based on different facts and will require different quanta of proof. While the contracts may have some relationship to one another, there is not a sufficient nexus for this Court to find that the claims arise out of the same transaction or occurrence.

### B. "Cause" to Deny Countersecurity

Because this Court finds that the parties' claims do not arise out of the same transaction or occurrence, the merits of Tonnevold's argument that Eastwind and ECo are alter egos need not be addressed. However, that fact that Eastwind's claim against Tonnevold must

7

be arbitrated in London under English law, while Tonnevold's counterclaim is being arbitrated against ECo (but not Eastwind) in New York under New York law, gives this Court additional "cause" under Rule E(7) to decline to exercise its discretion with respect to countersecurity.

Indeed, there is no need to place Tonnevold on equal footing with Eastwind with respect to security or to institute reciprocal protections where Tonnevold has not indicated any intention to bring its counterclaim in the London arbitration, or to add Eastwind as a defendant in the New York arbitration. *See DSND Subsea AS v. Oceanografia, S.A. de CV*, 569 F. Supp. 2d 339, 350 (S.D.N.Y. 2008) (denying the defendant's motion for countersecurity where the defendant was not bringing its counterclaim in the plaintiff's arbitration or against the plaintiff in any other civil arena). Even if Eastwind and ECo were alter egos, this Court would find persuasive Eastwind's argument that "Tonnevold is simply transparently attempting to accomplish what it could not accomplish otherwise, obtaining security for the ongoing arbitration in New York between it and nonparty ECo Shipping Ltd." (*See* Pl.'s Mem. in Opp. to Mot. for Countersecurity at 14.)

Moreover, should Tonnevold prevail on its claims against ECo in the New York arbitration, it may bring a separate action against Eastwind to enforce the award against ECo, invoking the "alter ego" theory. *See, e.g., Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir.), *cert. denied*, 373 U.S. 949 (1963).

Therefore, because Tonnevold's counterclaim does not arise from the same transaction or occurrence that is the source of Eastwind's original claim, and because the claim and counterclaim must be arbitrated in different forums applying different law, Supplemental Rule E(7)(a) does not support the imposition of countersecurity here.

## V. CONCLUSION

For the reasons stated, Defendant's motion is DENIED. The Clerk of the Court is instructed to close this motion.

**IT IS SO ORDERED.**
New York, New York
November 10, 2008

_____
U.S.D.J.